UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KIM GLOVER o/b/o A.S., | ) |
| Plaintiff, | ) Case No. EDCV 08-00992 AJW |
| v. | ) MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff's mother and guardian ad litem filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for child's supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff protectively filed an application for child's SSI benefits on February 24, 2004. [JS 2]. Plaintiff was born in October 1994 and was thirteen years old when this action was filed. [Administrative Record ("AR") 15 ]. In a September 28, 2006 hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") denied plaintiff's application for child's SSI benefits on the ground that although plaintiff has severe impairments consisting of attention deficit

hyperactivity disorder ("ADHD") and a conduct disorder, those impairments did not meet, medically equal, or functionally equal any impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listing"). [AR 17].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Standard governing childhood disability**

A child under the age of 18 is disabled within the meaning of the Social Security Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i) (as amended); see 20 C.F.R. § 416.906; see Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000) (citing section 1382c(a)(3)(C)(i)). The regulations governing the evaluation of childhood disability provide that "if the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled." Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir. 1997) (citing 20 C.F.R. § 416.928 (a)); see 20 C.F.R. §§ 416.902, 416.906, 416.924-416.926a (regulations concerning childhood disability standards).

To meet a listed impairment, a claimant must show that his or her impairment "meet[s] all of the

specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990); see Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To medically "equal" a listed impairment, a claimant must present medical findings at least equal in severity and duration to all of the criteria for the most similar listed impairment. See Sullivan, 493 U.S. at 531; Tackett, 180 F.3d at 1099-1100; 20 C.F.R. § 416.926 (discussing medical equivalence for adults and children).

If a child disability claimant does not have an impairment or combination of impairments that meets or medically equals any listing, the ALJ must consider "whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). "Functional equivalence" is determined not by reference to the criteria for any particular listed impairment, but by reviewing all relevant information in the case record, including information from a broad range of medical sources and nonmedical sources, to assess the child's functioning in six areas, which are referred to as "domains." See 20 C.F.R. § 416.926a. The domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment or combination of impairments functionally equals the listing if, applying criteria detailed in the Commissioner's regulations, it results in "marked" limitations in two of these domains or an "extreme" limitation in one domain. 20 C.F.R. 416.926a(a),(e)-(l).

The ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment, and that his impairments did not functionally equal a listed impairment because he had marked limitations in only one functional domain, specifically, interacting and relating with others. The ALJ found that plaintiff had no limitations in moving about and manipulating objects, caring for self or health or physical well-being and less than marked limitations in acquiring and using information and attending and completing tasks. [Ar 15].

**Treating source opinions**

Plaintiff contends that the ALJ erroneously ignored (1) diagnoses of depression not otherwise specified ("NOS") and "educational problems" in a psychiatric evaluation report dated March 6, 2002 from the County of San Bernardino Department of Behavioral Health ("San Bernardino Behavioral Health"); (2) a Global Assessment of Function ("GAF") score of 51 in a January 2002 initial assessment report from San

Bernardino Behavioral Health, signifying moderate psychiatric symptoms or moderate difficulty in social, occupational, or school functioning; and (3) a January 14, 2004[1] assessment form required by the county welfare department to determine plaintiff's eligibility for certain public assistance programs. [See JR 3-5; AR 311-312, 372-376].

Plaintiff filed a prior application for child's SSI benefits that was denied by an ALJ in a hearing decision dated March 5, 2003. After the Appeals Council denied plaintiff's request for review of that decision, he did not file an action for judicial review. Instead, plaintiff protectively filed a new application for child's SSI benefits in February 2004. [JS 2; AR 15, 50-54].

Under the doctrine of res judicata, the prior, final determination of nondisability on March 5, 2003 bars relitigation of plaintiff's disability claim through that date. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) (holding that res judicata barred reconsideration of claim for period with respect to which a final determination had already been made); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (noting that the principles of res judicata apply to administrative decisions); Thompson v. Schweiker, 665 F.2d 936, 940 (9th Cir. 1982)(stating that res judicata may bar a disability claim that has already been finally decided unless its invocation would "contravene an overriding public policy or result in manifest injustice"). The ALJ did not reopen the March 2003 decision. [AR 15-17, 491-492, 558]. See Lester, 81 F.3d at 827 (holding that the Commissioner properly applied res judicata to bar reconsideration of a period for which a prior, final determination had been made by declining to reopen the prior application).

A prior final, binding determination of nondisability also creates a presumption that the claimant continued to be "not disabled" after the date of the prior adverse decision. See Lester, 81 F.3d at 827; Lyle v. Sec'y of Health & Human Servs., 700 F.2d 566, 567 (9th Cir. 1983). The claimant has the burden of rebutting the presumption by presenting "proof of change," such as a new medically-determinable impairment, an increase in the severity of an existing impairment, or a change in the criteria for determining whether the claimant is disabled. See Lester, 81 F.3d at 827-828; Chavez, 844 F.2d at 693; Lyle, 700 F.2d at 568-569. If a claimant does not adduce "proof of change" in his medical condition or other "changed circumstances," the ALJ is not obliged to make a de novo determination of nondisability, even when the

---

[1] Plaintiff mistakenly asserts that the form is dated January 14, 2006. [JS 3].

4

burden of establishing disability otherwise would fall to the Commissioner (as, for example, it does at step five of the sequential evaluation). See Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1379-1380 (9th Cir. 1984) .

Plaintiff's January 2002 GAF score and March 2002 diagnosis of depression NOS predate the March 2003 denial of benefits by twelve to fourteen months. Res judicata bars relitigation of the issue of plaintiff's disability during that period. In January 2004, a month before plaintiff protectively filed his current application, plaintiff's treating family practice doctor completed an assessment form indicating that plaintiff has "poor attention span hyperactivity - impulsivity" and "depression." [AR 374]. Those impairments were not new, and they were determined to be of less than disabling severity when plaintiff's prior benefits application was denied in March 2003. Plaintiff adduced no evidence of a material increase in their severity or other "changed circumstance" in January 2004 sufficient to sustain his burden to rebut the presumption of continuing nondisability. See Greene v. Astrue, 2008 WL 5423846, at *4 (C. D. Cal. 2008)(rejecting the argument that the ALJ failed properly to consider the claimant's borderline intellectual functioning where the claimant failed to show any material change in intellectual functioning since the date of a prior, final determination of nondisability, and holding that "no further consideration of [the claimant's] mental impairment is necessary"). Therefore, plaintiff's argument lacks merit.

**Examining source evidence**

Plaintiff contends that the ALJ selectively and improperly rejected findings made by the Commissioner's examining psychologist, Clifford Taylor, Ph.D., in an October 2005 psychological evaluation report. [JS 5-8; AR 461-467]. Plaintiff points to findings by Dr. Taylor that plaintiff's "insight and judgment might be impaired secondary to revenge fantasies, outbursts of anger, tantrums, and poor social relations," as well as Dr. Taylor's assessment that plaintiff had borderline intellectual functioning, borderline/low verbal comprehension, borderline perceptual reasoning, borderline working memory, and moderate to marked social difficulties due to oppositional-defiant disorder and underlying revenge fantasies. [JS 5 (quoting AR 461-467)].

Dr. Taylor elicited a history from plaintiff's mother, who accompanied him during the examination, administered a battery of psychological tests, and conducted a mental status examination. [AR 461-466]. Dr. Taylor's psychiatric diagnoses were ADHD, combined type and oppositional defiant disorder. [AR 466].

5

1 Dr. Taylor also observed that plaintiff was functioning in the high borderline to low average range of
2 intellectual functioning. The diagnosis of oppositional defiant disorder reflected plaintiff's "a general
3 feeling of victimization, acting out, poor impulse control, aggressive behaviors, feeling of deprivation, and
4 conflict and competition with older siblings spilling over into peer and authority relations." [AR 466]. In
5 addition, plaintiff spoke of "revenge fantasies" and using knives, bombs and fire to destroy things. Dr.
6 Taylor said that plaintiff presented an elevated risk of harm to others as he developed and entered
7 adolescence, and he recommended "some fairly aggressive psychiatric treatment" to prevent worsening of
8 plaintiff's conduct disorder and a potential antisocial personality disorder. [AR 466].

9 Dr. Taylor made findings concerning plaintiff's cognitive development, communication
10 development, social development, response to stimuli, and concentration, persistence, and pace. [AR 466-
11 467]. With respect to cognitive development, Dr. Taylor said that plaintiff's ability to understand and
12 respond to increasingly complex requests and his ability to understand and follow instructions at an age-
13 appropriate level were mildly impaired due to borderline IQ test scores and plaintiff's presentation.
14 Plaintiff's communication development (referring to plaintiff's ability to use language, process, and follow
15 verbal instructions) was adequate and age-appropriate. [AR 466]. Plaintiff had "moderate to marked"
16 limitations in social development due to oppositional defiant disorder and underlying revenge fantasies,
17 which revolved around "wanting to be a police officer or Santa Claus in order to take things away from
18 others that are mean to him." Dr. Taylor added that plaintiff's adaptive functioning was intact, but that his
19 ability to relate to authority figures was moderately impaired. [AR 466-467]. Plaintiff's ability to respond
20 to stimuli and his concentration, persistence, and pace were moderately impaired due to ADHD. [AR 467].

21 The ALJ may reject the controverted opinion of an examining physician for specific and legitimate
22 reasons that are supported by substantial evidence in the record. See Lester, 81 F.3d at 830-831. The ALJ,
23 however, is not obliged to discuss, and provide a rationale for rejecting, every discrete examination finding
24 made by the physician.

25 The ALJ discussed and gave appropriate weight to Dr. Taylor's evaluation. First, the ALJ relied on
26 Dr. Taylor's findings of borderline to low average intellectual functioning and mildly impaired cognitive
27 functioning to support the ALJ's finding that plaintiff had less than marked functional limitations in
28 acquiring and using information. [AR 15-16].

Second, the ALJ noted that Dr. Taylor had concluded that plaintiff was able to process verbal instructions adequately and follow directions in a manner appropriate to his age and development. Based on that evidence, as well as on the medical expert's testimony that plaintiff had less than marked limitations in concentration, persistence, and pace, the ALJ rationally inferred that plaintiff had less than marked limitations in attending and completing tasks. [AR 16]. Dr. Taylor opined that plaintiff had "moderate" limitations in concentration, persistence, and pace and in his ability to respond to stimuli. Because a "moderate" limitation is less than a "marked" limitation, the ALJ did not reject Dr. Taylor's opinion in that respect.

Third, the ALJ found that plaintiff had marked limitations in interacting and relating with others based, in part, on Dr. Taylor's conclusion that plaintiff had moderate to marked social difficulties stemming from his oppositional defiant disorder and "underlying revenge fantasies" that impaired his ability to relate to others. [AR 16, 467].[2]

Plaintiff argues that the ALJ erred in failing to discuss Dr. Taylor's finding that plaintiff's "insight and judgment might be impaired secondary to revenge fantasies, outbursts of anger, [and] tantrums." [JS 8 (emphasis omitted)]. Because all Dr. Taylor said was that plaintiff's insight and judgment "may be impaired" [AR 464 (emphasis added)], it is unclear whether that statement even amounts to a finding. Even assuming it was, that finding was made by Dr. Taylor as part of his mental status examination. Dr. Taylor considered the results of plaintiff's mental status examination, along with plaintiff's history and psychological test results, to formulate his diagnostic impression, narrative assessment, and functional limitations. The ALJ properly considered overall Dr. Taylor's opinion, rather than singling out pieces of the underlying psychological data weighed by Dr. Taylor in reaching his conclusions.

For all of these reasons, the ALJ did not commit legal error in evaluating Dr. Taylor's opinion.

**Development of the record**

Plaintiff contends that the ALJ failed to fully and fairly develop the record regarding the diagnosis of depression reflected in the March 2002 treatment notes and the January 2004 treating source assessment

---

[2] Dr. Taylor did not make specific findings relevant to the remaining three domains (moving about and manipulating objects, caring for oneself, and health and physical well-being), which are outside the scope of a psychological evaluation.

that plaintiff contends the ALJ erroneously rejected. [See JS 9-11].

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where, as here, "the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). A claimant, however, retains the burden of proving that he is disabled. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-460 (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

As explained above, under the doctrine of res judicata and the presumption of continuing nondisability, the ALJ did not err in failing to consider diagnoses of depression from March 2002 and January 2004, respectively. Therefore, no inadequacy or ambiguity existed triggering a duty on the part of the ALJ to develop the record further regarding plaintiff's depression. Plaintiff's contention lacks merit.

**Lay witness testimony**

Plaintiff contends that the ALJ failed properly to consider, and gave insufficient reasons for rejecting, the testimony of plaintiff's mother, Kim Glover. [See JS 11-14].

Under Ninth Circuit law, "[t]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings." Robbins, 466 F.3d at 885. While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)).

The ALJ took into account Ms. Glover's statements, as reported by Dr. Taylor, about her son's behavioral and emotional problems, as well as her account of his self-care and physical activities, to assess the functionally limiting effects of plaintiff's mental impairments. [See AR 15-16, 461-463]. The ALJ also said that during the hearing, Ms. Glover testified that plaintiff

is not cooperative with his school counselor, has temper tantrums, is quite hyperactive, and 'enjoys aggravating people.' The claimant lives with is unemployed mother[,] and the

claimant's father apparently does not live at home or support his children[,] which are the claimant's 6 siblings to age 17, of which the claimant is the youngest.

[AR 16-17]. The ALJ considered that testimony in determining that plaintiff had severe ADHD and a conduct disorder, and that he had marked or less than marked functional limitations in three of the six relevant functional domains. The ALJ also cited Ms. Glover's statements to support his finding that plaintiff had no limitations in the domains of self-care, physical well-being, and moving and manipulating objects. [See AR 16]. Accordingly, the ALJ did not err in assessing Ms. Glover's lay witness testimony.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

October 18, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge